# Exhibit 1

**From:** O'Leary, Leah <Leah.OLeary@oag.texas.gov>
**Sent:** Thursday, April 22, 2021 1:25 PM
**To:** Peter Walker <Peter_Walker@fd.org>; Matthew Lawry <Matthew_Lawry@fd.org>; rwrogersiii@aol.com
**Cc:** Holmes, Melissa <Melissa.Holmes@oag.texas.gov>
**Subject:** Gutierrez v. Collier: TDCJ Execution Policy-April 21, 2021

Good afternoon.

As of April 21, 2021, TDCJ has implemented a new execution policy. I've attached it here. The new policy will allow an inmate's spiritual advisor inside the execution chamber subject to vetting and other restrictions. The policy also extends the time for spiritual advisor visits in the pre-execution holding area.

I would like to request that we stay the discovery responses that are currently due on April 29, 2021. Once you have had an opportunity to review the policy and discuss with your client, we should probably have a call to discuss the remaining issues in the case and how we will proceed.

Please let me know if you agree to staying the discovery responses for now.

Thank you.

*Leah O'Leary*
Deputy Chief-Law Enforcement Defense Division
Office of the Attorney General of Texas
Leah.Oleary@oag.texas.gov
Phone: 512-936-1292



# Exhibit 2

# TEXAS DEPARTMENT OF CRIMINAL JUSTICE

## Correctional Institutions Division



## EXECUTION PROCEDURE

### April 2021

### *ADOPTION OF EXECUTION PROCEDURE*

In my duties as Division Director of the Correctional Institutions Division, I hereby adopt the attached Execution Procedure for use in the operation of the Texas Department of Criminal Justice Death Row housing units and perimeter functions. This Procedure complies with Texas Board of Criminal Justice Rule §152.51; §§492.013(a), 493.004, Texas Government Code; and Articles 43.14 – 43.20, Texas Code of Criminal Procedure.


_____                     _____
Bobby Lumpkin                                       Date
Director, Correctional Institutions Division

4. 21. 2021

# EXECUTION PROCEDURES

I.     **Notification of a Scheduled Execution Date**

A.     Pursuant to Article 43.15, Texas Code of Criminal Procedure, the clerk of the trial court shall officially notify the Correctional Institutions Division (CID) Director, who shall then notify the Death Row Unit Warden and the Huntsville Unit Warden, of an inmate's scheduled execution date. Once a scheduled execution date is received, the Death Row Unit Warden's office shall notify the unit's Chief of Classification and the Death Row Supervisor.

B.     The Death Row Supervisor shall schedule an interview with the inmate and provide the inmate with the Notification of Execution Date (Form 1). This form provides the inmate with a list of the information that shall be requested from the inmate two (2) weeks before the scheduled execution.

C.     The inmate may be moved to a designated cell. Any keep-on-person (KOP) medication shall be confiscated and administered to the inmate as needed by medical staff on the unit.

D.     Upon the inmate's receipt of the Notification of Execution Date (Form 1), the inmate shall have thirty (30) days to submit a request in writing to the Death Row Unit Warden to have a TDCJ Chaplain or the inmate's spiritual advisor present inside the execution chamber during the inmate's scheduled execution.

E.     The inmate's requested spiritual advisor must be included on the inmate's visitation list and have previously established an ongoing spiritual relationship with the inmate demonstrated by regular communications or in-person visits with the inmate before the inmate's scheduled execution date.

F.     If an inmate requests to have a spiritual advisor present inside the execution chamber during the inmate's scheduled execution, the inmate will provide the Death Row Unit Warden with contact information for the spiritual advisor. Upon receipt of the spiritual advisor's contact information, the Death Row Unit Warden shall contact the spiritual advisor.

1.     The spiritual advisor shall have fourteen (14) days from the date of contact with the Death Row Unit Warden to provide credentials to the Death Row Unit Warden verifying the individual's official status as a spiritual advisor. As required in TDCJ Chaplaincy Manual Policy 11.09, "Inmate Ministerial and Spiritual Advisor Visits," the credentials shall be at least one of the following:

a.     Minister Identification Card supplied by the authorizing denomination or religious group;

    b.      License or ordination certificate;

    c.      Official letter from an organized religious body or congregation indicating the status of the letter holder as an official representative of the religious body or congregation for all religious functions or for specific prison-related religious functions; or

    d.      A current listing as a clergy person in an official listing of ministers and clergy from an organized religious body.

2.      The TDCJ will perform a background check, including but not limited to a criminal background check, on the spiritual advisor.

3.      If the spiritual advisor is approved to be present inside the execution chamber during the inmate's scheduled execution, the spiritual advisor must satisfactorily complete a two (2) hour, in-person orientation with a staff member of the Rehabilitation Programs Division a minimum of ten (10) days before the inmate's scheduled execution date.

4.      If the spiritual advisor is determined to be a security risk, the Huntsville Unit Warden or designee may deny the inmate's request for the spiritual advisor to be present inside the execution chamber during the inmate's scheduled execution.

5.      The inmate or spiritual advisor may appeal the denial of the inmate's request to have the spiritual advisor present inside the execution chamber during the inmate's scheduled execution by submitting a request in writing to the CID Director. The decision of the CID Director is final.

## II.      Preparation of the Execution Summary and Packet

A.      Two Weeks (14 days) Before the Scheduled Execution

1.      The Death Row Unit is responsible for completion of the Execution Packet which shall include:

    a.  Execution Summary;
    b.  Religious Orientation Statement;
    c.  Current Visitation List;
    d.  Execution Watch Notification;
    e.  Execution Watch Log;
    f.  Inmate Request for Withdrawal (I-25);
    g.  Inmate Property Documentation (PROP-05 and PROP-08); and
    h.  Other documents as necessary.

2.   The Execution Summary (Form 2) and the Religious Orientation Statement (Form 3) shall be forwarded to the Death Row Supervisor or the Death Row Unit Warden's designee for completion. A copy of the inmate's current visitation list and recent commissary activity shall also be provided.

3.   The Death Row Supervisor shall arrange an interview with the inmate to gather the information necessary to complete the Execution Summary and Religious Orientation Statement.

4.   The Execution Summary must be completed and returned by the Death Row Supervisor or the Death Row Unit Warden's designee in sufficient time to be forwarded to the CID Director's Office by noon of the fourteenth (14th) day. After approval by the CID Director, the Execution Summary shall be forwarded to the Death Row Unit Chaplain, the Huntsville Unit Warden's Office, and the Communications Department.

5.   If the inmate wishes to change the names of the inmate's witnesses, and it is less than fourteen (14) days before the scheduled execution date, the inmate shall submit a request in writing to the CID Director, through the Death Row Unit Warden, who shall approve or disapprove the changes.

6.   While completing the Religious Orientation Statement, staff shall confirm if the inmate still requests the presence of a TDCJ Chaplain or the inmate's approved spiritual advisor in the execution chamber during the inmate's scheduled execution.

7.   An inmate may request to have the inmate's body donated to the Texas State Anatomical Board for medical education and research. The appropriate paperwork shall be supplied to the inmate upon request.

B.   One Week (7 days) Before the Scheduled Execution

1.   The Death Row Supervisor or the Death Row Unit Warden's designee shall notify staff (Form 4) to begin the Execution Watch Log (Form 5).

2.   The Execution Watch Log shall begin at 6:00 a.m. Central Time seven (7) days before the inmate's scheduled execution. The seven (7) day timeframe shall not include the day of the inmate's scheduled execution. The inmate shall be observed, logging the inmate's activities every 30 minutes for the first six (6) days and every 15 minutes for the remaining 36 hours.

3.   The Communications Department may request information from the Execution Watch Log on the day of the inmate's scheduled execution.

4.      The original Execution Packet and the inmate's medical file shall be sent with the inmate in the transport vehicle to the Huntsville Unit or the Goree Unit for a female inmate.

      a.   The Death Row Unit Warden shall maintain a copy of the Execution Packet on the Death Row Unit.

      b.   If there are any changes necessary to the Execution Packet, staff shall notify the CID Director's Office and the Huntsville Unit Warden's Office.

C.   The Day of the Scheduled Execution

1.      On the morning of the day of the scheduled execution, before final visitation, all the inmate's personal property shall be packed and inventoried. The property officer shall complete an "Inmate Property Inventory" (PROP-05) detailing each item of the inmate's property. The property officer shall also complete a "Disposition of Confiscated Inmate Property" (PROP-08) indicating the inmate's choice of disposition of personal property.

      a.   If disposition is to be made from the Huntsville Unit, a copy of the property forms shall be maintained by the Death Row Unit Property Officer, and the original property forms shall be forwarded to the Huntsville Unit with the inmate's property.

      b.   If disposition is to be made from the Death Row Unit, a copy of the property forms shall be placed in the Execution Packet, and the original forms shall be maintained on the Death Row Unit through the completion of the disposition process.

      c.   The Mountain View Unit Warden shall ensure that a female inmate brings personal hygiene and gender-specific items to the Huntsville Unit as appropriate.

2.      Designated staff shall obtain the inmate's current trust fund balance and prepare the Inmate Request for Withdrawal (I-25) for completion by the inmate.

      a.   The following statement shall be written or typed on the reverse side of the I-25 form, "In the event of my execution, please distribute the balance of my Inmate Trust Fund account as directed by this Request for Withdrawal." The inmate's name, number, signature, thumbprint, and the date and time of the inmate's signature shall be included below this statement. Two (2) employees' names and signatures shall be printed and signed below the inmate's signature

as witnesses that the inmate authorized the form.

    b.    The I-25 form shall be delivered to the Commissary and Trust Fund Department for processing by 10:00 a.m. Central Time the next business day following the completed execution.

3.    The inmate shall be permitted visitation with individuals designated on the inmate's approved visitation list on the morning of the day of the scheduled execution.

    a.    Exceptions may be made to schedule as many visits as possible before the inmate is transported to the Huntsville Unit. These visits are considered "Special Visits."

    b.    Special visits (spiritual advisor, attorney(s), and individuals not on the inmate's approved visitation list) shall be approved by the Death Row or Goree Unit Warden or designee. No changes shall be made to the inmate's approved visitation list.

    c.    No media visits shall be allowed at the Goree Unit.

4.    When appropriate, a male inmate shall be escorted to a holding cell at the Polunsky Unit. The Execution Transport Log for Male Inmates (Form 6) shall be initiated, and the inmate shall be prepared for transport to the Huntsville Unit. The Execution Watch Log shall be discontinued when the Execution Transport Log for Male Inmates is initiated.

5.    A female inmate may be transported to the Goree Unit before the day of the inmate's scheduled execution. The Execution Transport Log for Female Inmates (Form 7) shall be initiated at the Mountain View Unit. The Goree Unit staff will initiate the Execution Watch Log upon arrival at the Goree Unit, permit visitation as appropriate, and transport the female inmate to the Huntsville Unit. The Execution Watch Log shall be discontinued, and the Execution Transport Log for Female Inmates shall resume when the female inmate departs the Goree Unit.

6.    Any transportation arrangements for the inmate between units shall be known only to the Wardens involved, the CID Director, as well as those persons they designate as having a need to know. No public announcement shall be made concerning the exact time, method, or route of transfer.

7.    Upon arrival at the Huntsville Unit, the inmate shall be removed from the transport vehicle and escorted by Huntsville Unit security staff into the execution holding area. The CID Director's Office and the Communications Department shall be notified immediately after the inmate arrives at the Huntsville Unit.

8.   The Execution Watch Log shall immediately resume when the inmate enters the pre-execution holding area.

9.   The inmate's restraints shall be removed, and the inmate shall be fingerprinted and strip-searched.

10.   The inmate shall be placed in a holding cell and issued a clean set of TDCJ clothing.

11.   The Huntsville Unit Warden shall be notified after the inmate has been secured in the holding cell. The Huntsville Unit Warden or designee shall interview the inmate and review the information in the Execution Packet.

12.   The inmate shall be permitted visitation with a TDCJ Chaplain(s), the inmate's approved spiritual advisor, and the inmate's attorney(s) on the day of the scheduled execution at the Huntsville Unit. The Huntsville Unit Warden must approve all visits.

13.   There shall be no family or media visits allowed at the Huntsville Unit.

## III.   Drug Team Qualifications and Training

A.   The drug team shall have at least one medically trained individual. Each medically trained individual shall at least be certified or licensed as a certified medical assistant, phlebotomist, emergency medical technician, paramedic, or military corpsman. Each medically trained individual shall have one year of professional experience before participating as part of the drug team, shall retain current licensure, and shall fulfill continuing education requirements commensurate with licensure. Neither medically trained individuals nor any other members of the drug team shall be identified.

B.   Each new member of the drug team shall receive training before participating in an execution without direct supervision. The training shall consist of following the drug team through at least two (2) executions, receiving step-by-step instruction from existing team members. The new team member will then participate in at least two (2) executions under the direct supervision of existing team members. Thereafter, the new team member may participate in executions without the direct supervision of existing team members.

C.   The Huntsville Unit Warden shall review annually the training and current licensure, as appropriate, of each drug team member to ensure compliance with the required qualifications and training.

**IV.      Pre-execution Procedures**

    A.    The Huntsville Unit Warden's Office shall serve as the communication command post, and entry to the office area shall be restricted.

    B.    Inventory and Equipment Check

        1.    Designated Huntsville Unit staff are responsible for ensuring the purchase, storage, and control of all chemicals used in lethal injection executions for the State of Texas.

        2.    The drug team shall obtain all equipment and supplies necessary to perform the lethal injection from the designated storage area.

        3.    An inventory and equipment check shall be conducted.

        4.    Expiration or beyond use dates of all applicable items are to be checked on each individual item. Outdated items shall be replaced immediately.

    C.    Attorney visits shall occur between 3:00 and 4:00 p.m. Central Time, and spiritual advisor visits shall occur between 3:00 and 5:00 p.m. Central Time. The attorney and spiritual advisor may not meet with the inmate at the same time. Exceptions may be granted under unusual circumstances and must be approved by the Huntsville Unit Warden.

        1.    The inmate's attorney or the inmate's approved spiritual advisor must arrive at the Huntsville Unit no later than 2:30 p.m. Central Time on the day of the scheduled execution to participate in an attorney or spiritual advisor visit with the inmate.

        2.    The inmate's approved spiritual advisor must arrive at the Huntsville Unit no later than 5:00 p.m. Central Time on the day of the scheduled execution to accompany the inmate in the execution chamber.

        3.    The failure of an inmate's approved spiritual advisor to arrive at the Huntsville Unit before 5:00 p.m. Central Time on the day of the scheduled execution will not prevent the execution from proceeding.

    D.    The inmate shall be served a last meal at approximately 5:00 p.m. Central Time.

    E.    The inmate shall be afforded an opportunity to shower and shall be issued a clean set of TDCJ clothing at some time before 6:00 p.m. Central Time.

**V.      Preparations for the Lethal Injection**

    A.    One (1) syringe of normal saline shall be prepared by members of the drug team.

B.    The lethal injection drug shall be mixed and syringes shall be prepared by members of the drug team as follows:

Pentobarbital - 100 milliliters of solution containing 5 grams of Pentobarbital.

C.    The drug team shall have available a back-up set of the normal saline syringe and the lethal injection drug in case unforeseen events make their use necessary.

## VI.    Execution Procedures

A.    After 6:00 p.m. Central Time and after confirming with the Office of the Attorney General and the Governor's Office that no further stays of execution, if any, will be imposed and that imposition of the court's order should proceed, the CID Director or designee shall give the order to escort the inmate into the execution chamber.

B.    The inmate shall be escorted from the holding cell into the execution chamber and secured to the gurney.

C.    A medically trained individual shall insert intravenous (IV) catheters into a suitable vein of the inmate. If a suitable vein cannot be discovered in an arm, the medically trained individual shall substitute a suitable vein in another part of the body but shall not use a "cut-down" procedure to access a suitable vein. The medically trained individual shall take as much time as is needed to properly insert the IV lines. The medically trained individual shall connect an IV administration set and start a normal saline solution to flow at a slow rate through one of the lines. The second line is started as a precaution and is used only if a potential problem is identified with the primary line. The CID Director or designee, the Huntsville Unit Warden or designee, and the medically trained individual shall observe the IV lines to ensure that the rate of flow is uninterrupted.

D.    After the normal saline solution IV has been started and is running properly, the following shall occur as instructed by the Huntsville Unit Warden or designee:

1.    If requested by the inmate and previously approved by the TDCJ, a TDCJ Chaplain or the inmate's approved spiritual advisor will be escorted into the execution chamber by an agency representative to observe the inmate's execution.

2.    Witnesses to the execution shall be escorted into the appropriate witness rooms.

NOTE: Any behavior by the spiritual advisor or witnesses deemed by the CID Director or designee to be disruptive to the execution procedure shall be cause for immediate removal from the Huntsville Unit.

E.     The CID Director or designee shall give the order to commence with the execution.

F.     The Huntsville Unit Warden or designee shall allow the inmate to make a brief, last statement.

G.     The Huntsville Unit Warden or designee shall instruct the drug team to induce, by syringe, substances necessary to cause death.

H.     The flow of normal saline solution through the IV shall be discontinued, and the lethal dose of Pentobarbital shall be commenced.

I.     When the entire contents of the syringe have been injected, the line shall be flushed with an injection of normal saline solution.

J.     The CID Director or designee and the Huntsville Unit Warden or designee shall observe the appearance of the inmate during application of the Pentobarbital. If, after a sufficient time for death to have occurred, the inmate exhibits visible signs of life, the CID Director or designee shall instruct the drug team to administer an additional 5 grams of Pentobarbital followed with a normal saline solution flush.

K.     At the completion of the process and after a sufficient time for death to have occurred, the Huntsville Unit Warden or designee shall direct the physician to enter the execution chamber to examine the inmate, pronounce the inmate death, and designate the official time of death. After the inmate is pronounced deceased, the spiritual advisor will be escorted from the execution chamber, and the witnesses shall be escorted from the witness rooms.

L.     The inmate's body shall be immediately removed from the execution chamber and transported by a coordinating funeral home. Arrangements for the inmate's body shall be concluded before the execution.

## VII.     Stays of Execution

A.     Official notification of a stay of execution shall be delivered to the CID Director, the Death Row Unit Warden, and the Huntsville Unit Warden. **Staff must not accept a stay of execution from the inmate's attorney**. After the official stay of execution is received, the Death Row Unit Warden's office shall notify the unit's Chief of Classification and Death Row Supervisor.

B.     Designated staff on the Death Row Unit shall notify the inmate that a stay of execution has been received.

VIII.    **Confidentiality of Participants**

    A.    Participants in the execution process shall not be identified, nor shall their names be released to the public.

    B.    Before participating in a scheduled execution, the inmate's approved spiritual advisor must sign a nondisclosure agreement and agree to keep confidential all information, including but not limited to the identities of TDCJ employees, members of the drug team, and any other participant in the execution, obtained or learned by the inmate's approved spiritual advisor when participating in the inmate's scheduled execution.

    C.    Violation of the nondisclosure agreement may subject the inmate's approved spiritual advisor to civil or criminal penalties under state law.

IX.    **TDCJ Employee Orientation**

    A.    TDCJ employees shall receive an orientation with the Huntsville, Goree, Polunsky, or Mountain View Unit Wardens, who shall inform the employees of TDCJ Executive Directive 06.63, "Crisis Response Intervention Support Program," (CRISP).

    B.    TDCJ employees shall be encouraged to contact the Regional CRISP Team Leader following their initial participation in the execution process.

# Exhibit 3

**From:** O'Leary, Leah <Leah.OLeary@oag.texas.gov>
**Sent:** Thursday, May 20, 2021 5:05 PM
**To:** Peter Walker <Peter_Walker@fd.org>; Matthew Lawry <Matthew_Lawry@fd.org>;
rwrogersiii@aol.com
**Cc:** Holmes, Melissa <Melissa.Holmes@oag.texas.gov>
**Subject:** RE: Gutierrez v. Collier: TDCJ Execution Policy-April 21, 2021

Peter,  TDCJ will not permit Mr. Gutierrez's spiritual advisor to place his hand on Mr.
Gutierrez's shoulder once it is time for the lethal injection to be administered. Thank
you for your response. I will indicate your opposition in my motion.

Respectfully,

*Leah O'Leary*
Deputy Chief-Law Enforcement Defense Division
Office of the Attorney General of Texas
Leah.Oleary@oag.texas.gov
Phone: 512-936-1292



**From:** Peter Walker <Peter_Walker@fd.org>
**Sent:** Thursday, May 20, 2021 2:50 PM
**To:** O'Leary, Leah <Leah.OLeary@oag.texas.gov>; Matthew Lawry <Matthew_Lawry@fd.org>;
rwrogersiii@aol.com
**Cc:** Holmes, Melissa <Melissa.Holmes@oag.texas.gov>
**Subject:** RE: Gutierrez v. Collier: TDCJ Execution Policy-April 21, 2021

Good afternoon,

Thank you for notifying us of your intent to file a motion to dismiss.  We are opposed.

While TDCJ's April 2021 Execution Procedure provides for the presence of a spiritual advisor in the
chamber at the time of execution, it does not address several of Plaintiff's spiritual needs.  Specifically,
consistent with his Catholic faith:

1.  Plaintiff needs the spiritual advisor of his choosing to pray uninterrupted for several minutes
    while touching his shoulder in the chamber directly prior to the administration of lethal
    injection; and

2. Plaintiff needs the spiritual advisor of his choosing to continue prayer out loud while touching his shoulder in the chamber as lethal injection is being administered until he is pronounced dead.

Please let us know if TDCJ will accommodate both of Plaintiff's spiritual needs outlined above in their entirety.

Thank you,
Peter Walker
Assistant Federal Defender, Capital Habeas Unit
Federal Community Defender Office
   for the Eastern District of Pennsylvania
601 Walnut St., Suite 545 West
Philadelphia, PA 19106
Phone: (215) 928-0520

**From:** Peter Walker
**Sent:** Wednesday, May 19, 2021 3:41 PM
**To:** 'O'Leary, Leah' <Leah.OLeary@oag.texas.gov>; Matthew Lawry <Matthew_Lawry@fd.org>; rwrogersiii@aol.com
**Cc:** Holmes, Melissa <Melissa.Holmes@oag.texas.gov>
**Subject:** RE: Gutierrez v. Collier: TDCJ Execution Policy-April 21, 2021

Ms. O'Leary,

Thanks for reaching out. We're meeting to discuss this as a team, and we will get back to you tomorrow afternoon.

Thanks again,
Peter Walker
Assistant Federal Defender, Capital Habeas Unit
Federal Community Defender Office
   for the Eastern District of Pennsylvania
601 Walnut St., Suite 545 West
Philadelphia, PA 19106
Phone: (215) 928-0520

**From:** O'Leary, Leah <Leah.OLeary@oag.texas.gov>
**Sent:** Wednesday, May 19, 2021 1:36 PM
**To:** Matthew Lawry <Matthew_Lawry@fd.org>; Peter Walker <Peter_Walker@fd.org>; rwrogersiii@aol.com
**Cc:** Holmes, Melissa <Melissa.Holmes@oag.texas.gov>
**Subject:** RE: Gutierrez v. Collier: TDCJ Execution Policy-April 21, 2021

Good afternoon,   I intend to file a motion to dismiss Mr. Gutierrez's suit based on mootness in light of the new Execution Procedure.  I believe Judge Tagle will appreciate if the parties confer as to what issues remain unresolved following the policy change.  Will you please let me know if you are opposed to the motion to dismiss and whether Mr. Gutierrez believes there remains unresolved claims.

If you prefer to have a phone call, please let me know. I will make myself available at your convenience.  Thank you.

*Leah O'Leary*

Deputy Chief-Law Enforcement Defense Division
Office of the Attorney General of Texas
Leah.Oleary@oag.texas.gov
Phone: 512-936-1292



# Exhibit 4

Polunsky Unit
# Chaplaincy Department I-60 Response Form

---

Offender Name: **Gutierrez, Ruben**                    TDCJ # : **999308**

Offender Housing: **12-A-13**                          Date: **7-10-21**

---

I-60 Dated: **6-21-21**

**Chaplaincy's Reply:   I received your I-60 informing me that you would like to have your spiritual advisor inside the execution chamber with you if your execution goes through. For this, you will need to follow the process described in section I(D) of the April 2021 TDCJ Execution Procedure. You also informed me that you would like for your spiritual advisor to be touching you and praying with you until the moment your spirit leaves your body. At this time TDCJ does not allow the spiritual advisor to touch or pray out loud with the inmate once inside the execution chamber. If you would like for your spiritual advisor to visit and pray with you from 3:00pm to 5:00pm  on the day of your scheduled execution, you may specify that on your Religious Orientation Statement.**

**Blessings Chaplain Joaquin Gay**

---

 Tips for requesting Chapel assistance:
If you are requesting a Faith Change please specify which religion you want to change to.
If you are requesting Indigent Hygiene, One I-60 will do, If you submit one I-60 you will _NOT_ receive one of these forms. The Chapel does NOT check the list. **DO NOT HAND YOUR I-60 TO ANOTHER OFFENDER TO TURN IN TI MUST COME THROUGH THE MAIL ROOM!** Once you have submitted your I-60  must go through the mail room so please allow a few days to receive a response from the Chapel. It is not an overnight response!   Note: if you submit an I-60 and are not sent one of these forms from the Chaplaincy this does not mean we did not receive your I-60! Please be patient and wait for a response.

# Exhibit 5

**SUBJECT:** *State briefly the problem on which you desire assistance.*

Warden Dickerson, back on June 9, 2021 I was notified my you, that I had been issued a execution date which is scheduled for Oct. 27, 2021. During that interview, you notified me to send you a I-60 within 30-days of said notification, requesting my Spiritual Advisor. In doing so now, Id like to request that Father Tarsisius Puling (936) 967-8385 not only be my approved Spiritual Advisor, but also present with me in the executon chamber the entire time untill I am pronounced dead. Furthermore, Id like to ask that he be able to touch my shoulder, and pray for me out loud untill after I am pronounced dead and my soul has left my body. As thats the proper way to perform Viaticum (Last Rite's), and which is part of my Religious belief, and this needs to be done to ensure my path to the after life. In closing, I thank you for your time and help in this matter.

Respectfully,

Name: Ruben Gutierrez      No: #999308      Unit: Polunsky

Living Quarters: A-A-#13 cell      Work Assignment: N/A (D/R)

---

**DISPOSITION:** (Inmate will not write in this space)

*TDCJ Policy does not allow spiritual advisor to touch the inmate in the Chamber due to security concerns. He may be in the Chamber though.* (CA)

☆I-60 (Rev. 11-90)

TEXAS DEPARTMENT OF CRIMINAL JUSTICE — INSTITUTIONAL DIVISION

# INMATE REQUEST TO OFFICIAL

REASON FOR REQUEST: (Please check one)

**PLEASE ABIDE BY THE FOLLOWING CHANNELS OF COMMUNICATION. THIS WILL SAVE TIME, GET YOUR REQUEST TO THE PROPER PERSON, AND GET AN ANSWER TO YOU MORE QUICKLY.**

1. ❏ *Unit Assignment, Transfer (Chairman of Classification, Administration Building)*

2. ❏ *Restoration of Lost overtime (Unit Warden-if approved, it will be forwarded to the State Disciplinary Committee)*

3. ❏ *Request for Promotion in Class or to Trusty Class (Unit Warden- if approved, will be forwarded to the Director of Classification)*

4. ❏ *Clemency-Pardon, parole, early out-mandatory supervision (Board of Pardons and Paroles, 8610 Shoal Creek Blvd. Austin, Texas 78757)*

5. ❏ *Visiting List (Asst. Director of classification, Administration Building)*

6. ❏ *Parole requirements and related information (Unit Parole Counselor)*

7. ❏ *Inmate Prison Record (Request for copy of record, information on parole eligibility, discharge date, detainers-Unit Administration)*

8. ❏ *Personal Interview with a representative of an outside agency (Treatment Division, Administration Building)*

TO: <u>Head Warden Dickerson (Polunsky Unit)</u>        DATE: <u>July 6, 2021</u>
        *(Name and title of official)*                        (7.6)

ADDRESS:<u>Polunsky Unit</u>